UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

PATRICK COTTON, )
)
Petitioner, )
)
v. ) No. 4:15-CV-1414-SPM
)
STATE OF MISSOURI, )
)
Respondent. )

## MEMORANDUM AND ORDER

This matter is before the Court on Missouri state prisoner Patrick Cotton's ("Petitioner's") Petitioner's *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Doc. 5). For the following reasons, the petition for a writ of habeas corpus will be denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The following background is taken from the Missouri Court of Appeals' opinion affirming the motion court's denial of Petitioner's motion for post-conviction relief:

> [Petitioner] was an inmate in the custody of the Missouri Department of Corrections. While in prison, [Petitioner] was involved in an altercation during which he struck Corrections Officer Anastacia Hirsch in the side and back of her head several times, grabbed her by the throat and threw her to the ground, causing her to hit her head on the ground. Keith Watson, a case manager at the prison, attempted to intervene. Corrections Officer Hirsch was diagnosed with a concussion and suffered scrapes and bruises to her neck, back, head, and arms. Watson allegedly suffered scrapes on his arm and knee as a result of the intervention.
> [Petitioner] was charged with two counts of violence to an employee of the department of corrections by an inmate, Section 217.385, R.S. Mo. 2000. A jury convicted [Petitioner] of only the charge related to Corrections Officer Hirsch. [Petitioner] was sentenced, as a persistent offender, to twenty-five years

1

of imprisonment. [Petitioner's] convictions and sentences were affirmed on direct appeal. State v. Cotton, 398 S.W.92 (Mo. App. E.D. 2013).

Resp't Ex. I at 2-3.

In his direct appeal, Petitioner raised two points of trial error: (1) that the trial court abused its discretion in overruling his motion to dismiss, which alleged that prison officials had viewed and then destroyed video footage of the incident that formed the basis of his charges, in violation of his rights under the Fifth and Fourteenth Amendments to the United States Constitution and his rights under the Missouri Constitution; and (2) that the trial court erred in denying his motion to strike a particular juror for cause, in violation of Plaintiff's rights under the Sixth and Fourteenth Amendments to the United States Constitution and his rights under the Missouri Constitution. Resp't Ex. B-1 at 13-14. Both claims were denied on the merits, and the conviction was affirmed. Resp't Ex. E at 3-8.

Petitioner filed a *pro se* Rule 29.15 motion for post-conviction relief, asserting three claims: the two claims he raised on direct appeal, and a claim of ineffective assistance of counsel based several alleged defects in his attorney's performance. Resp't Ex. F at 8-15.[1] Through counsel, Petitioner subsequently filed an amended motion for post-conviction relief, asserting three claims of ineffective assistance of counsel: (1) that Petitioner's trial counsel failed to adduce evidence of an interoffice memorandum dated June 17, 2010, which showed there was reviewable video of the alleged incident that was destroyed only after Petitioner asserted his right to trial; (2) that Petitioner's trial counsel failed to object to the use of the initial aggressor language in the jury instructions; and (3) that Petitioner's trial counsel failed to cross-examine the alleged victim, Anastacia Hirsch, using photographs that showed her injuries were more

---

[1] Respondent's Exhibit F contains multiple conflicting page numbers. The Court cites to the page numbers of the electronically filed document.

minor than she portrayed them to be. Resp't Ex. F at 20-24. The motion court found all of Petitioner's claims without merit and denied the motion; it appears that the motion court considered only the claims in Petitioner's *pro se* motion. Resp't Ex. F at 40-46. Petitioner appealed the motion court's denial of his ineffective assistance claims, arguing the motion court erred in denying his motion without an evidentiary hearing because it entered only findings of fact and conclusions of law as to Petitioner's *pro se* claims, which were rendered a nullity when the amended motion was filed by counsel. Resp't Ex. I at 1-2. The Missouri Court of Appeals affirmed the motion court's decision. Resp't Ex. I at 5, 10.

On September 14, 2015, Petitioner filed his *pro se* petition in the instant action. Petitioner raises four claims: (1) that the prosecution knowingly used perjured testimony of the victim, Anastacia Hirsch, to convict him;[2] (2) that the trial court erred by overruling Petitioner's motion to dismiss based on the state's alleged bad-faith destruction of potentially exculpatory evidence; (3) that the trial court erred in denying his motion to strike a juror whose answers revealed a pre-existing bias in favor of law enforcement; and (4) that his trial counsel was ineffective for (a) failing to introduce evidence that visible footage of the incident did exist; and (b) failing to use photographs of the victim's alleged injuries in cross-examining her regarding the extent of her injuries.

## II.  LEGAL STANDARDS

### A.  Standard for Reviewing Claims on the Merits

Federal habeas review exists only "as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86,

---

[2] The nature of Petitioner's claims is not entirely clear from the face of the Petition. In describing Petitioner's claims, the Court relies in part on Petitioner's description of his claims in his Reply.

102-03 (2011)). Accordingly, "[i]n the habeas setting, a federal court is bound by AEDPA [the Antiterrorism and Effective Death Penalty Act] to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. § 2254). Under AEDPA, a federal court may not grant relief to a state prisoner with respect to any claim that was adjudicated on the merits in the state court proceedings unless the state court's adjudication of a claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court decision involves an "unreasonable application" of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08; *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (citations and internal quotation marks omitted); *see also Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (noting that state court factual findings are presumed correct unless the habeas petitioner rebuts them through clear and convincing evidence) (citing 28 U.S.C. § 2254(e)(1)).

### B. Procedural Default

To preserve a claim for federal habeas review, a state prisoner must present that claim to the state court and allow that court the opportunity to address the claim. *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). *See also Beaulieu v. Minnesota*, 583 F.3d 570, 573 ("Ordinarily, a federal court reviewing a state conviction in a 28 U.S.C. § 2254 proceeding may consider only those claims which the petitioner has presented to the state court in accordance with state procedural rules.") (quoting *Gilmore v. Armontrout*, 861 F.2d 1061, 1065 (8th Cir. 1988)). "Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Moore-El*, 446 F.3d at 896 (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992), & *Abdullah v. Groose*, 75 F.3d 408, 411 (8th Cir. 1996)). The federal habeas court will consider a procedurally defaulted claim only "where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.* To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, a petitioner must demonstrate that the claimed errors "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Lastly, in order to assert the fundamental miscarriage of justice exception, a petitioner must "'present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted.'" *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

## III. DISCUSSION

### A. Ground One: The Prosecution's Use of Perjured Testimony

In Ground One, Petitioner argues the prosecution knowingly used perjured testimony to convict him. Petitioner contends that Anastacia Hirsch's testimony at trial concerning the assault was inconsistent with prior recorded or written statements she made about the incident, that this inconsistency amounts to perjury, and that the prosecution knew of the perjury. Pet'r Reply at 3-10.

Respondent argues that Ground One is procedurally defaulted because Petitioner failed to present it to the Missouri state courts in accordance with Missouri's procedural rules. The Court agrees. "Missouri procedure requires that a claim be presented 'at each step of the judicial process' in order to avoid default." *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir. 1994) (quoting *Benson v. State*, 611 S.W.2d 538, 541 (Mo. Ct. App. 1980)). Under Missouri law, claims of prosecutorial misconduct that are apparent at trial must be raised on direct appeal, and claims that are "serious and would not be apparent during the trial" may be raised in motion for post-conviction relief. *Tisius v. State*, 183 S.W.3d 207, 212 (Mo. 2006). Petitioner admits that he did not raise this claim either in his direct appeal or in his post-conviction relief proceedings. Pet'n at 6-7. Thus, Ground One is procedurally defaulted, and the Court cannot reach the merits of this claim unless Petitioner can show "either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Moore-El*, 446 F.3d at 896.

Petitioner has not shown cause to excuse the procedural default of Ground One. Petitioner's sole explanation for his failure to present this claim in his direct appeal is that "[t]he public defender decided how they wanted to do things." Pet'n at 6. This statement is not sufficient to suggest that Petitioner is asserting that his direct appeal counsel was ineffective for

failing to raise this claim. However, even assuming, *arguendo*, that this statement could be construed as an assertion that Petitioner's direct appeal counsel was ineffective for failing to raise this claim, it cannot constitute cause in this case. A claim of ineffective assistance of appellate counsel cannot constitute cause to excuse a procedural default where the claim of ineffective assistance of appellate counsel is *itself* procedurally defaulted, unless the petitioner shows cause and prejudice to excuse that procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000). Here, Petitioner did not raise a claim of ineffective assistance of appellate counsel in the appeal from the denial of his motion for post-conviction relief, Resp't Ex. G at 15-20, so it is procedurally defaulted. *See Moore-El v. Luebbers*, 446 F.3d 890, 897-98 (8th Cir. 2006) (Missouri inmate's failure to raise a claim on appeal from the denial of state post-conviction relief constitutes a procedural default of that claim); *Osborne v. Puckett*, 411 F.3d 911, 919 (8th Cir. 2005) (same). Petitioner offers no argument as to why there is cause for the procedural default of that claim.

Further, Petitioner cannot avoid the procedural bar under the fundamental miscarriage of justice exception. Petitioner states in his Reply that "failure to consider the claim will result in a manifestation of injustice and a miscarriage of justice as well." Reply, at 3. However, to satisfy the fundamental miscarriage of justice exception, a petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)). Petitioner does not allege any facts to support the existence of new evidence affirmatively demonstrating his innocence.

**B. Ground Two: Destruction of Potentially Exculpatory Video Footage**

In Ground Two, Petitioner argues that the trial court erred in overruling his motion to dismiss based on the state having destroyed potentially exculpatory evidence in bad faith—specifically, video footage of the incident that gave rise to his conviction. To support this claim, Petitioner alleges that in 2010, Captain Darrell Howe worked at the control center where the incident was recorded and said that the control center had recorded the incident. Petitioner argues that this is inconsistent with his 2012 statement in an interoffice memorandum that video footage of the incident was distorted with glare from the sun and foliage from the trees, such that no actual video footage of the incident could be seen or recorded. Petitioner raised this claim in his direct appeal, and the Missouri Court of Appeals considered it and rejected it on the merits. Resp't Ex. E at 4.

A due process violation occurs when the government "suppresses or fails to disclose material exculpatory evidence." *Illinois v. Fisher*, 540 U.S. 544, 547 (2004) (per curiam). However, the failure to preserve "'potentially useful evidence' does not violate due process *unless a defendant can show bad faith on the part of the police*.'" *Id.* at 547-48 (quoting *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)). A mere showing of reckless or negligent destruction of potentially useful evidence does not satisfy the requirement of bad faith. *United States v. Webster*, 625 F.3d 439, 447 (8th Cir. 2010). The requirement that a defendant show bad faith on the part of the police is intended to confine relief for failure to preserve evidence to "cases where the interests of justice most clearly require it, *i.e.*, those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." *Youngblood*, 488 U.S. at 58.

Prior to trial, Petitioner moved to dismiss the case against him based on the Department of Corrections' failure to preserve the video recording of the incident. Resp't Ex. D at 32. The trial court held a hearing on the motion to dismiss, at which Howe testified. Resp't Ex. A at 18-41. Howe testified that the prison computers hold the video for somewhere between fourteen and thirty days, but that the footage is only downloaded and permanently preserved when it shows the use of force. *Id.* at 33-34. Howe testified that when he looked at the surveillance footage from June 15, 2010 (the date of the incident), the "the glare off the sun, the razor wire, the cyclone fence, and the trees didn't allow us to capture the event. So we didn't download it on to a DVR to see it." *Id.* at 23. He stated that "[t]here was no actual video footage of the incident, or the use of force." *Id.* He then made the decision not to preserve the video. *Id.* at 39. At the end of the hearing, the trial court denied the motion to dismiss, citing *Arizona v. Youngblood*, 488 U.S. 51 (1988), and finding no evidence of bad faith on the part of the Missouri Department of Corrections officials. Resp't Ex. A at 41.

On direct appeal, the Missouri Court of Appeals noted that "unless a defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Resp't Ex. E at 3 (citing *Youngblood*, 488 U.S. at 58). It reviewed Howe's testimony from the hearing on the motion to dismiss, which indicated that there was nothing on the video footage to preserve because the video footage was distorted and the incident could not be seen. *Id.* at 4. It also discussed an interoffice communication from Howe to another officer, which stated that because of the glare from the sun and the foliage from the trees and the foliage from the trees, the video footage of the incident could not be "seen or

recorded." *Id.*[3] The Missouri Court of Appeals concluded that the trial court had not abused its discretion in overruling the motion to dismiss, because "[t]he record is devoid of any evidence the State destroyed the video footage for the purpose of depriving [Petitioner] of exculpatory evidence," and it found that Petitioner "failed to show any bad faith on the part of the State." *Id.*

The state court's rejection of this claim on appeal was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. Both the trial court and the Missouri Court of Appeals correctly identified *Youngblood* as the applicable legal precedent in reviewing Petitioner's motion to dismiss, and they did not apply it in an unreasonable manner. The video footage at issue was only potentially useful to Petitioner's defense. Both the 2012 interoffice memorandum and the evidence presented at the hearing on the motion to dismiss support the conclusion that the reason the video footage was not preserved is that Howe reviewed it, determined that it did not include any visible footage of the incident, and made the decision (pursuant to Department of Corrections procedures) not to download it to preserve it. The state court reasonably determined that in light of this evidence, Petitioner could not show any bad faith on the part of the State.

---

[3] This memorandum was attached Plaintiff's motion to dismiss and appears to be the 2012 interoffice memorandum Petitioner mentioned in his Petition. This memorandum states:

> On 6-15-2010 a Use of Force took place when Offender Patrick Cotton #155478 assaulted COI Anastacia Hirsch. When the Stationary Camera monitor was viewed in the attempt to capture and record the Use of Force, the video Footage was distorted with glare from the sun off the razor wire, Cyclone Fence and foliage from the trees. No actual video footage of the Use of Force could be seen or recorded.

Pet'r Ex. M, Doc. 20-5, at 19.

Petitioner appears to suggest that an inter-office communication from June 17, 2010 (two days after the incident), sent from Chief of Custody Alan Ham to Warden Jennifer Sachse, shows that Howe's testimony was false. In that communication, Ham stated:

> An initial review committee was convened on [June 17, 2010] to review use of force reports and video of an incident involving offender Patrick Cotton #155478 on June 15, 2010.
> On June 15, 2010 at approximately 3:17 p.m. on the Housing Unit 2 Inner Yard, offender Cotton refused to comply with orders to be restrained and in an aggressive manner, did strike CO-I Anastacia Hirsch numerous times thereby knocking her and did also pick up a laundry cart and throw it at CCA Keith Watson. Cotton's aggressive actions resulted in pepper spray and physical force to be utilized to maintain control of the situation.
> The committee believes that the force used was minimal and justified to gain and maintain control of the offender.

Pet'r Ex. N at 20.[4] Petitioner suggests that this memorandum strongly implies the existence of a clear video and is therefore inconsistent with Howe's testimony. The Court disagrees. This memorandum suggests only that there was some video made of the incident, which is consistent with Howe's testimony. It does not show that there was a clear video showing what occurred. It does not contradict the plain testimony of Howe, who viewed the video, that there was no visible footage of the actual use of force, and that the absence of video footage was the reason why the video was not downloaded and preserved permanently. Thus, it is not inconsistent with the Missouri Court of Appeals' conclusion that Petitioner had not shown any bad faith on the part of the officers.

Petitioner also attaches to his Reply an "MECC Use of Force Checklist" dated June 15, 2010, in which Darrell Howe initialed a checklist item reading "Videotape was forwarded to the Investigator's Office upon the conclusion of the Use of Force," Pet'r Ex. Q, Doc. 20-5, at 25. Even assuming, *arguendo*, that the Court could consider this evidence, which was apparently not

---

[4] This communication was attached to Petitioner's direct appeal brief before the Missouri Court of Appeals. *See* Resp't Ex. B-2 at 6.

presented to the state court, this again suggests only that a video existed, not that the video contained visible footage.

For all of the above reasons, the state court's decision was not contrary to, or an unreasonable application of, clearly established federal law, nor did it involve an unreasonable determination of the facts. Ground Two will be denied.

### C.  Ground Three: Biased Juror

In Ground Three, Petitioner asserts that the trial court erred in denying his motion to strike a particular potential juror, Ledbetter. Petitioner argues that Ledbetter's responses during voir dire indicated a pre-existing bias in favor of law enforcement witnesses that she would not be able to set aside. Petitioner raised this claim in his direct appeal, and the Missouri Court of Appeals considered it and rejected it on the merits. Resp't Ex. E at 4-8.

The Sixth Amendment guarantees all those accused of a crime the right to be tried by an impartial jury, and the due process clause of the Fourteenth Amendment guarantees the same right in state criminal prosecutions. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 551 (1976) (citing *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968)). *See also Munt v. Grandlienard*, 829 F.3d 610, 614 (8th Cir. 2016). This "constitutional guarantee has not been granted if any member of the jury was biased.'" *Johnson v. Armontrout,* 961 F.2d 748, 751 (8th Cir. 1992). "Whether a juror is biased against the defendant is a question of fact, and [the court reviewing a habeas petition] will defer to the state court's finding 'if it is fairly supported by the record.'" *Williams v. Norris*, 612 F.3d 941, 954 (8th Cir. 2010) (quoting *Mack v. Caspari*, 92 F.3d 637, 642 (8th Cir. 1996). A finding regarding juror bias "is based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province." *Wainwright v. Witt*, 469 U.S. 412, 428 (1985). *See also Skilling v. United States*, 561 U.S. 358, 396 (2010) (recognizing that in

reviewing claims that a juror should have been dismissed for cause, "the deference due to district courts is at its pinnacle"). Thus, the trial court's determination as to juror bias is entitled to "substantial deference." *Munt*, 829 F.3d at 615. Even if a juror's statements during voir dire are contradictory, "the trial court [is] in a unique position to make the necessary credibility determination" regarding the question of bias. *Id.* at 616. In the habeas context, this court "will not second-guess such a determination absent clear and convincing evidence." *Id.*

During voir dire, Petitioner's attorney asked the prospective jurors whether they would give the testimony of a correctional officer and the testimony of an inmate equal credibility. Resp't Ex. A at 127-29. Ledbetter initially indicated she would be "somewhat" more prone to trust a correctional officer's testimony and "possibly" less inclined to view an inmate as credible. *Id.* at 132. She also indicated that although she thought she would not be biased, she could not say with conviction that she would not be biased. *Id.* at 135. However, upon further examination and instruction by the trial court, Ledbetter testified as follows:

> COURT:       Ms. Ledbetter, what we're talking about here is credibility
>              issues. And so both parties—it's fair to everybody to—they
>              shouldn't start off before they even get on the witness stand
>              with some stigma against them. Now, once they start
>              testifying, you could consider—you get an instruction,
>              which I think one of the attorneys talked about, that says
>              you can consider all kinds of reasonable things, like what
>              their occupations are, and you can do all that when they
>              testify, but you can't—in other words, the extreme would
>              be, you wouldn't believe anything anybody said because of
>              some stigma before they ever said a word. But that's what
>              they're really asking about.
>
> LEDBETTER:   That's what they're really asking, okay. In that case, now
>              that I truly, truly understand what the question is, I can.
>
> COURT:       Okay. Now, that's the extreme case. But I think what
>              [Petitioner's counsel] is concerned about is that you
>              would—now that you know what the obligation is, are you
>              telling me you'd be able to set aside your—you know, you

| | |
|---|---|
| | have a natural preconceived idea. It's not like you're a bad person or something. |
| LEDBETTER: | Right. |
| COURT: | Would you be able to set aside your preconceived ideas and let the witnesses testify before you start determining their credibility? |
| LEDBETTER: | I can do that. |
| COURT: | Would you be able to set aside what you've told [Petitioner's counsel] your concerns are? Are you telling me you can do that? |
| LEDBETTER: | I can do that. |
| COURT: | So you'd at least wait until they got on the stand and decide whether they are credible or not? You can consider all kinds of stuff that you'll be instructed about, including occupations, for credibility, or the reasonableness of their testimony, and the probability or improbability of it, their demeanor. You can consider all kinds of things that are reasonable. But you can't—he's just—what he's concerned about, and what we're all concerned about is that you have some— |
| LEDBETTER: | Preconceived notion— |
| COURT: | Right. |
| LEDBETTER: | —before they even get—no, I can put that aside. I can. |
| COURT: | So you're sure about that? |
| LEDBETTER: | I'm sure about that. |

*Id.* at 135-37. Petitioner moved to strike Ledbetter for cause based on the totality of her answers. *Id.* at 138. The trial court denied the motion, stating, "I think after listening to the totality of her answers, I think she understands her obligation now. And she says she can put aside any qualms that she had about it, and she can give both parties a fair shot with any witness that would testify, and start out neutral. That's what she said. I tend to believe—I do believe that, so I'll deny the

request to strike her for cause." *Id.* at 138-39. On direct appeal, the Missouri Court of Appeals affirmed. Resp't Ex. E at 4-8. The appeals court reviewed Ledbetter's testimony and found that "[a]lthough Ledbetter initially expressed a potential bias in favor of the testimony of correctional officers, upon further examination by the court, she was able to unequivocally state that she would not prejudge witness testimony and would follow the court's instructions." *Id.* at 7. The court found that "[g]iven the trial court's better position to observe the demeanor of Ledbetter, we do not find a clear abuse of discretion in finding that Ledbetter was qualified to serve as a juror." *Id.* at 8.

The state court's rejection of this claim on appeal was not contrary to, or an unreasonable application of, clearly established federal law, nor did it involve an unreasonable determination of the facts in light of the evidence presented. The state courts' finding that Ledbetter could be fair and impartial has support in the record. Although Ledbetter's initial answers indicated a possible bias in favor of law enforcement witnesses, after examination by the trial court, she unequivocally stated she was "sure" she could set aside her preconceived notions, follow the court's instructions, and allow the witnesses to testify before deciding their credibility. Resp't Ex. A at 136-38. While the trial judge may have employed some questionable tactics in rehabilitating Ledbetter, the trial judge's determination that she would not be biased is not unreasonable. Unlike this Court, the trial judge was in a position to observe Ledbetter and to make an appropriate credibility determination based on that observation. The Missouri Court of Appeals reasonably deferred to that determination. Petitioner has not shown by clear and convincing evidence that Ledbetter was, in fact, biased against him.

For all of these reasons, Ground Three will be denied.

**D. Ground Four: Ineffective Assistance of Counsel**

In Ground Four, Petitioner appears to be asserting two claims of ineffective assistance of trial counsel. First, he appears to be arguing that his trial counsel was ineffective in that he failed to adduce evidence of a June 17, 2010 memorandum stating that "an initial review committee was convened on [June 17, 2010] to review use of force reports and video of an incident involving offender Patrick Cotton #155478 on June 15, 2010." Pet'r Ex. N, Doc. 20-5, at 20. Petitioner suggests that this memorandum would have helped to show that there was visible video footage of the incident that was destroyed. Second, he argues that his trial counsel was ineffective in that he failed to cross-examine the victim with photographs that showed her injuries to be more minor than she alleged. The Missouri Court of Appeals reviewed both claims on the merits and found Petitioner was not entitled to relief. Resp't Ex. I at 6-7, 9-10.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To show ineffective assistance of counsel, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Id.* at 687. Performance is deficient when "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "Judicial scrutiny of counsel's performance must be highly deferential and Petitioner must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Id.* at 689 (internal quotations omitted). To show prejudice, Petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Where an ineffective assistance claim has been addressed by the state court, "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). In a habeas claim, it is not sufficient for a petitioner to "show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). To succeed on such a claim, a petitioner "must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699.

The Court will address each of Petitioner's ineffective assistance of counsel claims separately.

### 1. Ineffective Assistance of Counsel: Failure to Adduce Evidence of June 17, 2010 Memorandum to Show That Video Footage Existed

In this claim, Petitioner asserts that his trial counsel was ineffective because he did not adduce evidence of a June 17, 2010 interoffice memorandum that Petitioner claims showed there was reviewable video footage of the incident. He argues that this evidence would have seriously undermined the credibility of the state's witnesses and strongly supported his version of events and, thus, would have been reasonably likely to lead to a different result. Petitioner raised this claim in the appeal from the denial of his motion for post-conviction relief, and the Missouri Court of Appeals considered this claim and rejected it on the merits. Resp't Ex. I at 10.

A review of the record shows that the Missouri Court of Appeals did not apply *Strickland* in an unreasonable manner and did not make an unreasonable determination of the facts. The Missouri Court of Appeals set forth the *Strickland* test and found that Petitioner could not satisfy the prejudice prong of the *Strickland* test. *Id.* at 3-4, 6-7. The court offered several reasons for its conclusion: that Petitioner had not pleaded facts to show how the memorandum would have been

admissible through any witnesses he planned to call; that Petitioner had failed to identify any witness who could have authenticated the memorandum; that "the memorandum would have provided, at best, impeachment evidence on the collateral issue of whether there was a usable video and would not have provided a viable defense"; that "[e]ven if the video did exist, [Petitioner] had not alleged facts showing the content of the video contradicted Howe's testimony that it was obscured"; and that "[e]ven if the video would have contradicted Howe's testimony, [Petitioner] did not testify that it was exculpatory or even favorable to him." *Id.* at 6-7. This analysis was not objectively unreasonable, particularly in light of the highly deferential standard this Court must apply. As discussed above, even if this memorandum suggests that a video of the incident did exist at some point, it does not show that the video contained visible footage of the incident. Thus, it would not have contradicted Howe's testimony that the reason the video was not permanently preserved was that it contained no visible footage of the incident. Also, nothing in the memorandum suggests that any visible footage, if it existed, would have been exculpatory; to the contrary, the same memorandum stated that Petitioner struck Hirsch in an aggressive manner numerous times and that "[Petitioner's] aggressive actions resulted in pepper spray and physical force to be utilized to maintain control of the situation." Resp't Ex. B-2 at 6. It was reasonable for the Missouri Court of Appeals to find that Petitioner had not shown a reasonable probability that, had his trial counsel used the memorandum as evidence, the result of the state proceedings would have been different.

To the extent that Petitioner is also arguing that his attorney was ineffective for failing to adduce evidence of the "MECC Use of Force Checklist," Pet'r Ex. Q, Doc. 20-5, at 25, discussed *supra*, a similar analysis applies. This checklist suggests only that a video existed shortly after the incident, not that a video with visible footage existed.

For all of the above reasons, the state court's denial of this claim was not contrary to or an unreasonable application of *Strickland*, nor did it involve an unreasonable determination of the facts. This claim will be denied.

## 2. Ineffective Assistance of Counsel: Failure to Use Photographs in Cross-Examination of Anastacia Hirsch

In his second ineffective assistance claim, Petitioner argues that his trial counsel was ineffective in that he failed to cross-examine the victim at trial using photographs of the victim showing that she had no injuries or that her injuries were not as severe as she claimed. He argues that, because the crucial issue at his trial was whether Petitioner's testimony was more credible than the testimony of the corrections officers, impeachment of Hirsch's testimony would have been reasonably likely to change the outcome of the trial. Petitioner also argues that if his counsel had introduced the photographs at sentencing, it might have resulted in a shorter sentence.

Petitioner raised this claim in his motion for post-conviction relief and on appeal from the denial of that motion, and the Missouri Court of Appeals denied it on the merits. Resp't Ex. I at 9-10. After articulating the appropriate *Strickland* standard, the state court found that the prejudice prong of *Strickland* was not satisfied, reasoning that the severity of injury is not an element of the crime of which Petitioner was convicted; that Petitioner admitted that the photographs did depict an injury to the victim; that the record contained significant other evidence of the victim's injuries; and that the photographs would fail to rebut evidence that the victim sustained a concussion from the incident. *Id.* at 10.

A review of the record shows that the Missouri Court of Appeals did not apply *Strickland* in an unreasonable manner or make an unreasonable determination of the facts. At trial, Hirsch testified that Petitioner hit her, she went flying, and she landed on the back of her head. Resp't

Ex. A at 186. She testified that she had a concussion, as well as scrapes and bruises on her arms, fingerprint bruising on her neck, and an abrasion and scrapes on the back of her head where she landed. *Id.* at 187-88. Ms. Hirsch's testimony was not the only evidence of her injuries; her medical records from St. John's Mercy Medical Center were also admitted into evidence. Resp't Ex. A at 188. Those records show that Hirsch had a concussion, had a bruise on her scalp two centimeters in diameter, had erythema[5] and bruising on her right forearm, had erythema on her neck; and had discomfort in the posterior neck. Pet'r Ex. J, Doc. 20-5, at 15-16. Additionally, two of Petitioner's fellow officers testified that they saw her knocked off her feet and land on her back or head, consistent with her testimony and the medical records indicating that Petitioner hit her head and sustained abrasions and a concussion. Resp't Ex. A at 227-28, 265. Even assuming, *arguendo*, that some or all of Hirsch's injuries are not visible in the photographs, those photographs would not have significantly undermined the evidence that Hirsch did suffer severe injuries, including a concussion. Based on these facts, it was entirely reasonable for the Missouri Court of Appeals to conclude that there was no reasonable probability that the outcome of the trial would have been different had Petitioner's trial counsel used these photographs to call into question Hirsch's credibility regarding her testimony at trial.

Petitioner's suggestion that cross-examination using the photographs would have led to a shorter sentence is also without merit. At sentencing, the trial court noted that his sentence was based on the fact that the victim sustained a concussion, that the incident had affected her life, and that the incident had affected other people that are in the institution. Pet'r Ex. P, Doc. 20-5, at 24. Because a concussion would not be visible in the photographs, and because the Court finds no reason to believe that the impact of the incident on Hirsch's life was dependent on whether

---

[5] Erythyma is "[r]edness due to capillary dilation, usually signaling a pathologic condition (e.g., inflammation, infection). *Stedman's Medical Dictionary*, 28th ed. (2006), at 666.

she had injuries that would be apparent from a photograph, none of these sentencing considerations would have been affected by the use of the photographs.

For all of the above reasons, the state court's denial of this claim was not contrary to or an unreasonable application of *Strickland*, nor did it involve an unreasonable determination of the facts. Accordingly, this claim will be denied.

### E.  Motion Requesting Evidentiary Hearing

Petitioner has filed a Motion Requesting an Evidentiary Hearing. (Doc. 19). Petitioner states that without a hearing, the Court will not be able to get a full, color view of the photographs that Petitioner asserts his trial counsel should have used to cross-examine Hirsch. He also states that he has "reports that were created by witnesses that ha[ve] their signatures on them that never were cross-examined about and such cross-examination needs to be done so that [the] Court can appreciate what the exhibits are evidence of." Doc. 19, at 2. Petitioner does not state what these documents are, but the Court presumes they include at least some of the exhibits attached to Petitioner's Reply, which include Hirsch's medical records, internal reports related to the incident at issue, and the June 15, 2010 "Use of Force Checklist" discussed *supra*.

As a preliminary matter, the Court notes that the evidence Petitioner seeks to develop in an evidentiary hearing appears to be primarily relevant to Petitioner's claims that the prosecution failed to preserve potentially exculpatory evidence and that his counsel was ineffective for failing to adequately cross-examine Hirsch using photographs of the victim and/or to cross-examine Howe using reports related to the existence of the video footage of the incident. However, because these claims were adjudicated on the merits in state court, this Court's review of the claim is limited to the record that was before the state court. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("[R]eview under [28 U.S.C.] § 2254(d)(1) is limited to the record that was

before the state court that adjudicated the claim on the merits."); 28 U.S.C. § 2254(d)(2) (providing that a claim shall not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts *in light of the evidence presented in the State court proceeding*") (emphasis added). Thus, no evidentiary hearing is permitted with respect to those claims.

Moreover, the Court finds that no evidentiary hearing would be warranted even if one were permitted. Even if an evidentiary hearing is permitted, the Court may deny an evidentiary hearing "if such a hearing would not assist in the resolution of [the Petitioner's] claim." *Johnston v. Luebbers*, 288 F.3d 1048, 1059 (8th Cir. 2002) (quotation marks omitted). *See also Crawford v. Norris*, 363 F. App'x 428, 430 (8th Cir. 2010) ("If the factual allegations a petitioner seeks to prove would not entitle him to relief under the relevant standard, then an evidentiary hearing is not required."). As discussed above, it is apparent that even if the photographs of Hirsch showed little or no visible injury, cross-examination using those photographs would not have sufficiently undermined the evidence presented at trial to create a reasonable probability that the outcome would have been different. As also discussed above, it is apparent that even if the memoranda and checklist Petitioner relies on had been used for cross-examination, they would not have shown the existence of visible video footage of the incident and would not have sufficiently undermined the evidence presented to create a reasonable probability that the outcome would have been different. Thus, Petitioner has not shown that development of the record with regard to those photographs and documents would assist the Court in resolving his claims or could entitle him to relief.

To the extent that Petitioner seeks to develop evidence regarding Ground One (the prosecution's use of perjured testimony), which was not adjudicated on the merits in state court,

Petitioner has also failed to establish that a hearing is permitted or warranted. As discussed above, this claim has been procedurally defaulted, and Petitioner has not established any cause to excuse the procedural default. Moreover, an evidentiary hearing is not permitted under 28 U.S.C. § 2254(e)(2). Under 28 U.S.C. § 2254(e)(2), where a petitioner has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that:

> (A) the claim relies on—
>
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B)  the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Petitioner failed to exercise diligence to develop the factual basis of this claim in state court, as he did not raise the claim in any state proceedings. Petitioner does not allege that any of his claims relies on a new rule of constitutional law, nor does he make any attempt to show that any of his claims relies on a factual predicate that could not have been previously discovered through the exercise of due diligence. Moreover, Petitioner has not shown how any of the evidence sought would establish his entitlement to relief on Ground One.

For all of the above reasons, Petitioner's request for an evidentiary hearing will be denied.

### F. Motion for Appointment of Counsel

Petitioner has also filed a motion for appointment of counsel. (Doc. 22). Petitioner has previously filed several motions for appointment of counsel in this case, which the Court has denied. (Doc. 12 & Doc. 15). For the reasons stated in the Court's prior orders, the instant motion for appointment of counsel will also be denied.

## IV.  CONCLUSION

For all of the above reasons, Petitioner is not entitled to federal habeas relief. Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals from the final order in a 28 U.S.C. § 2254 proceeding unless a circuit judge or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). To grant such a certificate, the judge must find that the petitioner "has made a substantial showing of the denial of a constitutional right." § 2253(c)(2); *Tiedman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citation omitted). The Court finds that reasonable jurists could not differ on Petitioner's claim, so the Court will not issue a certificate of appealability. Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's Motion Requesting Evidentiary Hearing (Doc. 19) is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's motion for appointment of counsel (Doc. 22) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**.

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue because Petitioner has failed to make a substantial showing that he has been denied a constitutional right. 28 U.S.C. § 2253.

A separate Judgment shall accompany this Memorandum and Order.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of September, 2018.